UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MARTEL CHAPMAN, et al.,                                                    PLAINTIFFS
individually and on behalf of
all others similarly situated

v.                                                    CIVIL ACTION NO. 3:05-CV-433-S

HARDIN COUNTY et al.                                                    DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the court on plaintiffs' motion for class certification (DN 117).

Defendants have responded (DN 128) and plaintiffs have replied (DN 135). Plaintiffs have further

moved for oral argument (DN 138) and defendants have responded (DN 141). Defendants have

moved for leave to file a sur-reply (DN 140) and plaintiffs have responded (DN 142). Defendants

have further moved for leave to file a supplemental response to plaintiffs' motion for class

certification (DN 146). Plaintiffs responded to defendants' motion without objection (DN 147).

After review of the record, the court finds that oral argument is unnecessary, and for the reasons that

follow will deny plaintiffs' motion for class certification. Consequently, the court will deny

defendants' motion for leave to file a sur-reply as moot.

BACKGROUND

This action was filed on August 1, 2005, by plaintiff Martel Chapman ("Chapman"), a

former inmate at the Hardin County Detention Center ("Jail"). Chapman alleges that defendants

Hardin County and Hardin County Jailer Louis Lawson ("Lawson") (hereinafter collectively,

"Defendants") failed to implement and enforce internal policies regarding the protection of inmates

from exposure to methicillin-resistant *Staphylococcus aureus* bacteria ("MRSA"), which caused her

to become infected with MRSA during her incarceration. Chapman further alleges that she was left

in contact with other inmates and not given proper treatment after she became infected.  Chapman alleges that it was the Jail's practice to leave infected inmates in contact with healthy inmates, which, coupled with the Jail's failure to educate inmates about hygiene and provide a sanitary environment, caused MRSA to spread through the inmate population.

MRSA is an antibiotic-resistant bacterium that flourishes in skin and mucus membranes, which can be chronic, fatal, and highly infectious.  *Motion for Class Certification*, p. 1.  Even otherwise healthy individuals can develop serious MRSA infections that lead to painful symptoms and severe illness or death.  *Id*. at 5.  Researchers report that jails and prisons are increasingly contributing to the community health problem of MRSA infections.  *Id*. at 7-10.  Inmates with MRSA are commonly misdiagnosed as having infected pimples, insect bites, spider bites, or sores. *Id*. at 4.

Chapman alleges that Defendants have known how to minimize inmate exposure to MRSA since at least September 2004.  However, Chapman alleges that Defendants have failed to implement and enforce the policies developed by the Jail in response to the MRSA threat. As a consequence, Chapman alleges that a multitude of Jail inmates have been exposed to MRSA.  Chapman alleges that more than eighty (80) inmates, and possibly many more, have been infected with MRSA at the Jail since the summer of 2004.

Chapman alleges that Defendants violated her constitutional rights (and the rights of others similarly situated) by failing to adequately minimize her exposure to MRSA.  Chapman asserts claims under 42 U.S.C. § 1983 for the violation of her Eighth, Tenth, and Fourteenth Amendment constitutional rights.  Chapman seeks to represent: (a) all persons who, since August 1, 2004, contracted MRSA at the Jail; and (b) all persons who are or will be confined at the Jail.

-2-

Chapman has submitted a number of exhibits and other evidence in support of her contention that Defendants failed to protect inmates from exposure to MRSA. This evidence includes: two protocols, one solicited by Lawson from Hardin Memorial Hospital and another issued by the Kentucky Department of Corrections, for minimizing inmate exposure to MRSA; a memorandum from Lawson to all Jail employees regarding procedures for handling MRSA-infected inmates; deposition testimony of inmates who claim to have been exposed to MRSA at the Jail; responses by forty-two (42) inmates who were treated for MRSA at the Jail to a questionnaire prepared by Chapman's counsel[1]; several academic and government publications about MRSA; Chapman's medical records; and the medical opinion of Dr. John Clark. Chapman also directs the court's attention to *Inmates of the Bucks County Correctional Facility v. Bucks County*, 2004 U.S. Dist. LEXIS 30547 (Dec. 20, 2004 E.D. Pa.), in which the court there granted class certification based on allegations of cruel and unusual punishment under the Eighth and Fourteenth Amendments regarding inmate exposure to MRSA.

Chapman alleges that the Jail failed to isolate infected inmates, as directed by the Jail's adopted MRSA protocols. Chapman was incarcerated on June 17, 2004 and placed in Pod 137 with multiple other female inmates, where she remained exclusively for more than three months. Shortly after Chapman entered the Jail, another woman in Pod 137 revealed a boil to the rest of the inmates in the pod and told them that she had a staph infection. This infected inmate had told the same to Jail officials when she was transferred to the Jail from Nelson County, where she had been

---

[1]The court observes that the surveys of potential claimants prepared by Chapman's counsel were not administered under oath. However, Chapman has provided supplementary affidavits of fifteen (15) of the forty-two (42) respondents, presumably to bolster the unsworn questionnaire responses.

previously diagnosed with MRSA.  The infected Nelson County transferee's case of MRSA had been "the first [Lawson] had ever heard of [MRSA]."

Subsequently, Chapman observed "a huge boil" on the back of a second woman in Pod 137 and a draining sore on the neck of another.  Chapman alleges that the inmate with the sore on her neck was left in the pod "for quite a while with it draining without them taking her out," and was also left in the pod while the results of a culture of the sore were pending.

On September 18, 2004, Chapman filled out a medical request form complaining, "I have a boil under my arm."  Jail medical staff saw Chapman that day, initiated an antibiotic, and noted for the record, "If draining, report to Med. for culture."  Chapman was not isolated at that time; she was left in the pod.  On September 20, Chapman filled out another medical request form, "I need to see the doctor.  I have a boil under my arm."  The Jail's contract physician saw Chapman the following day, reported that the boil had "minimal drainage," changed antibiotics, and ordered a culture.  Chapman was not isolated at that time; she was left in the pod.  On September 23, Chapman's culture returned confirmation of a "heavy growth" MRSA infection and Chapman was sent to an isolation cell.

Chapman alleges that before her move to isolation she was one of four inmates left in Pod 137 for days at a time while suffering obvious skin infections.  Eight (8) questionnaire respondents also allege that they were left in contact with other inmates after having developed open sores of their own.  Inmate Annette Borges ("Borges"), also a named plaintiff in this case, alleges that she was isolated after her first two outbreaks of MRSA in July 2005 but left in contact with other inmates following multiple subsequent outbreaks.

Chapman further alleges that the Jail failed to instruct inmates on the importance of proper

hygiene and frequent hand washing, as directed by Jail protocols.  Almost all of the questionnaire respondents allege that the Jail failed to instruct inmates on one or more of these issues: hand washing; the need to change sheets and towels; the need to bathe or shower daily; the hazards of sharing towels or razors; the need to report apparent symptoms; the dangers of touching sores or wounds; and the need to clean recreation and exercise equipment after use.  Inmate Tina Spears ("Spears"), another named plaintiff here, alleges that discussion of MRSA at the Jail was so minimal that she was given the assignment of cleaning isolation cells "unaware that there were people in there with staph infection."  Moreover, questionnaire respondents allege that the Jail misled inmates by telling infected individuals that their symptoms were spider bites, boils, or infected or ingrown hairs.

Chapman also alleges that the Jail failed to provide inmates clean clothes, linens, and living quarters, as directed by Jail protocols.  Chapman alleges that she was not given an opportunity to shower regularly while she was infected and in isolation.  Only one questionnaire respondent reports having received a daily change of clothes while isolated; none report having received a daily change of sheets.  Spears alleges that she did not receive a clean towel, washcloth, and uniform daily, as her hospital discharge called for, and she was not given materials to change her wound's dressing daily. Spears further alleges that her cell was not cleaned or sprayed with bleach on a regular basis, as directed.

Finally, Chapman alleges that the Jail failed to provide inmates diagnosed with MRSA a plan for follow-up care after release, which caused their families and the community to suffer.  Borges and inmate David Stallins, who is a named plaintiff as well, both allege that they transmitted MRSA to relatives after their releases from Jail.

-5-

Chapman argues that class certification should be granted in order to notify and locate those individuals similarly situated; to determine the scope of the MRSA problem throughout the Jail and the Hardin County community; and to bring the Jail into compliance with state policy.

Defendants argue that Chapman's proposed class of "all persons who are or will be confined at the Jail" is improper because there is no indication that such persons' rights are being or will be violated.  Moreover, Defendants assert that conditions at the Jail are improving.  Defendants argue that Chapman's proposed class of "all persons who, since August 1, 2004, contracted MRSA at the Jail" is improper because it would require extensive inquiry into whether each individual acquired MRSA at the Jail.

There are numerous disputed facts in this case.  Defendants dispute that there has ever been an MRSA problem at the Jail.  Defendants dispute that they failed to isolate infected inmates, educate inmates about proper hygiene, or provide inmates a sanitary environment.  Defendants disagree with Chapman on various aspects of the science of MRSA.

Defendants argue that distinct, individualized issues of fact surround each member of Chapman's proposed classes, and therefore this case is improper for class certification:

> This case is not appropriate for class treatment.  This case will never be appropriate for class treatment.  It does not contain a readily-identifiable class, the putative class definitions identify distinct questions of fact that would need to be answered by every named plaintiff and putative class member prior to ascertaining whether such individual is even a member of the class, and the merits of each putative class member's claim are so intermingled with proper consideration of issues germane to certification that class certification is improper.  *Response to Motion for Class Certification*, p. 42.

Restated, Defendants argue that to certify a class in this instance would require a mini-trial of each putative class member to determine whether that individual contracted MRSA at the Jail.  Defendants contend that Chapman cannot prove that she contracted MRSA at the Jail, much less that

she can prove the members of her first proposed class did.  Defendants argue that authenticating the

membership of Chapman's first proposed class would saddle the court with a vast administrative

burden, defeating the very purpose of class certification:

> The in-depth individual inquiries into the facts and circumstances of the claims of each potential class member necessary to establish membership and ultimately damages in the present case would create an administrative nightmare which far outweighs the economies of class litigation.  *Id.* at 46.

Defendants argue that class action is an inferior mechanism for resolution of Chapman's

claims and is not maintainable.   Defendants further argue that Chapman cannot meet the

prerequisites for class certification under Rule 23 of the Federal Rules of Civil Procedure.

## DISCUSSION

A party seeking class certification initially must meet the four prerequisites of Rule 23(a) of

the Federal Rules of Civil Procedure: (1) the class is so numerous that joinder of all members is

impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses

of the representative parties are typical of the claims or defenses of the class; and (4) the

representative parties will fairly and adequately protect the interests of the class.

The party seeking class certification bears the burden of establishing that certification is

proper.  *In re American Medical Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).  The party seeking

class certification must do more than simply rely upon mere repetition of the language of Rule 23(a).

*Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974).  A class is not maintainable

as a class action by virtue of its designation as such in the pleadings and the court must conduct a

rigorous analysis into whether the prerequisites of Rule 23 are met.  *American Medical* at 1078-79.

Chapman seeks to certify two classes: (a) all persons who, since August 1, 2004, contracted

MRSA at the Jail; and (b) all persons who are or will be confined at the Jail.

As a primary matter, the court finds that any person who meets only the class definition of "all persons who [] will be confined at the Jail" would lack standing in this situation because there is no indication that such persons' rights will necessarily be violated.  In addition, it would be unusual to be able to prove that a person will be, in the future, confined at the Jail.  Chapman certainly makes no such showing with respect to herself.

Further, because Chapman is no longer confined at the Jail, she is not similarly situated with "all persons who are [] confined at the Jail," and cannot purport to represent a class of which she is not a member.  Of course, current inmates who have contracted MRSA at the Jail since August 2004 fall within Chapman's first proposed class.  Accordingly, the court will only consider certification of Chapman's proposed class of all persons who, since August 1, 2004, contracted MRSA at the Jail.

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable.  There is no magic number at which joinder of all members becomes impracticable.  *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 570, 58 Fed. R. Serv. 3d 590 (6th Cir. 2004), cert. denied, 543 U.S. 1151, 125 S. Ct. 1334, 161 L. Ed. 2d 115 (2005) ("There is no automatic cut-off point at which the number of plaintiffs makes joinder impractical, thereby making a class-action suit the only viable alternative.").  Classes have ranged in size from just four (4) members, as in *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969), to the 1.6 million plaintiffs in *Dukes v. WalMart Stores, Inc.*, No. C01-2252 (N.D. Cal 6/22/04).  Ultimately, class certification is a mechanism for convenience in the administration of justice when a court finds that the number of parties involved would be otherwise unmanageable.

Chapman alleges to represent a  class of at least 80-plus persons who since August 1, 2004, have contracted MRSA at the Jail.  Chapman argues that 80 persons is a sufficient number to satisfy

numerosity.  However, Defendants argue that the true membership of Chapman's proposed class is not ascertainable and thus zero (emphasis theirs).  Defendants argue that the membership of Chapman's proposed class cannot be determined until the number of persons shown to have *contracted* MRSA at the Jail since August 2004 has been counted (emphasis theirs).  Defendants argue that such a tally is complicated by the recent "explosion" of MRSA in society, the heightened incidence of MRSA-colonized individuals in inmate populations compared to the public at large, and the uncertain science on the relationship between exposure to MRSA and infection.  *See Response to Motion for Class Certification* at 14-17; 22-24.  Defendants argue that putative members of the proposed class must be evaluated independently in order to determine the number of individuals, if any, whose primary exposure to MRSA occurred at the Jail.  Otherwise, Defendants contend that numerosity in this case is indeterminable and any finding that Chapman has met the numerosity requirement would be merely speculative.

While the burden is on Chapman to establish by a preponderance of the evidence that she (and those whom she seeks to represent) contracted MRSA at the Jail if she is to succeed on her claims, the law does not require that she fully prove her case at this stage of the litigation.  Theoretically, it is possible that each and every putative member of the proposed class contracted MRSA not at the Jail but at the courthouse, or at the supermarket.  If we consider the putative class members' affidavits stating no prior experience of MRSA symptoms before entering the Jail, it is not unreasonable to assume, *arguendo*, that the size of the class Chapman seeks to represent approximates 80 persons.

Yet joinder of all members of the proposed class is not impracticable.  Class certification is one of many available tools at the court's disposal for managing litigation between numerous

parties; in this case, the court has other tools better equipped for the task at hand.  The numerosity requirement has not been met.

Rule 23(a)(2) requires that there be questions of law or fact common to the class.  The Sixth Circuit has held that in order to satisfy the commonality requirement there need only be a single question common to all class members.  *American Medical* at 1080.  However, the question must be one the resolution of which will advance the litigation.  *Sprague v. General Motors*, 133 F.3d 388, 397 (6th Cir. 1998).  Chapman argues that there are several questions common to all members of the proposed class.  Chapman asserts that those questions are:

> (a) whether the Jail failed to properly screen, isolate, educate, or treat its inmates in violation of the very policies the Jail had adopted to protect inmates from MRSA; (b) whether the MRSA problem at the Jail was caused or contributed to by overcrowding, understaffing, underfunding, or a lack of training, education or supervision of the Jail's employees; (c) whether the Jail has experienced incidence of MRSA sufficient to warrant reporting to state correctional and local and state public health authorities; (d) whether the Jail has experienced an MRSA outbreak sufficient to warrant an outbreak investigation to determine the source of the MRSA infection and means of transmission; (e) whether the MRSA problem at the Jail reached epidemic proportions warranting the quarantine of the facility; (f) whether injunctive relief is necessary to protect current and future inmates at the Jail, and the Hardin County community; and (g) whether Defendants are liable for the actual damages sustained by infected inmates.  *Motion for Class Certification* at 39-40.

Regardless of the fact that the plaintiffs would pose these questions with respect to each putative claimant, it is clear that the answers either: (1) are different as to each individual claimant; or (2) do not advance the litigation because they do not impact liability or damages, thus defeating the "advance the litigation" requirement.

Moreover, in this case, there is no single set of operative facts that establishes liability on Defendants, or proximate cause with respect to each proposed class member.  Individualized inquiry is required to determine whether the Jail failed to protect any one given inmate from exposure to

MRSA.  It is clear that any question of actual damages would vary from class member to class member.  Even accepting Chapman's presupposition of an MRSA problem at the Jail, these questions ignore the overarching problem with the proposed class, which is further discussed below.

Even if the threshold for satisfying the commonality requirement of Rule 23(a)(2) is low, the questions as to the conditions at the Jail and the implementation of the Jail's MRSA policies are different for each putative claimant.  It is also obvious that the individual questions of jail conditions at the times each putative plaintiff was incarcerated would necessarily predominate over any common issues, thus negating the requirement of Rule 23(b)(3).  The commonality has not been met.

Typicality, like commonality, "serve[s] as [a] guidepost[] for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 158 n. 13 (1982).  Rule 23(a)(3) requires "the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147 (2nd Cir. 1997) (internal quotation marks and citation omitted).

As discussed with regard to commonality, a consistent theory of liability on the Jail's part is rather tenuous due to situational differences from one proposed class member to the next.  All class members' claims do not arise from the same course of events.  Therefore, the court cannot conclude that Chapman's claims are typical of those of the proposed class.  Moreover, Defendants have demonstrated the ability to posit unique defenses to the diverse allegations of the several named

-11-

plaintiffs.  By virtue of the binding and preclusive effect of class action judgments, *Hansberry v. Lee*, 311 U.S. 32, 61 S. Ct. 115, 85 L. Ed. 22 (1940), if the claim of Chapman (or any of the named plaintiffs) fails, so should the claims of all proposed class members.  The proposed class members' interests are not so nearly tethered to Chapman's own that their fates ought to be bound to hers.  The typicality requirement has not been met.

Rule 23(a)(4) requires that representative parties will fairly and adequately protect the interests of the class.  "There are two criteria for determining whether the representation of the class will be adequate: 1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel."  *Senter v. General Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir.1976).

As the court has found that Chapman lacks commonality and typicality of claims with unnamed members of the proposed class, Chapman does not have common interests to adequately represent those individuals.

Chapman has failed to establish the prerequisites for class certification under subsection (a) of Rule 23 of the Federal Rules of Civil Procedure.

CONCLUSION

Chapman's motion for class certification will be denied.  A separate order will be entered herein this date in accordance with this opinion.